Wilson & Co., Inc., Plaintiff and Appellant, *v.* Martín and José Aparicio, doing business under the firm name of Aparicio Hermanos, Defendants and Appellees.

No. 5180.    Argued June 26, 1930.—Decided July 28, 1931.

*Henry G. Molina, F. B. Fornaris,* and *M. León Parra* for appellant. *Ramón Dapena* and *V. Zayas Pizarro* for appellees.

Mr. Justice Aldrey delivered the opinion of the Court.

This is an appeal taken by the plaintiff, Wilson & Co., Inc., from a judgment dismissing its complaint with costs, rendered on a motion for nonsuit presented by the defendants at the close of plaintiff's evidence.

The essential question involved in this litigation is as to the interpretation of a term used in the contract between the parties. The other questions are subsidiary thereto.

J. A. Mirabal, an employee of Goble & Jiménez, who are plaintiff's agents in Ponce, entered into the following contract with the defendants:

"Goble & Jiménez—Provisions Brokers—49 Tetuán Street—San Juan, P. R.—Order No. 57; date, January 25, 1928.—Buyer, Aparicio Hnos., Ponce.—2 semi-monthly shipments (*embarques*) during February.—For account of Wilson & Co.—Terms: as usual or ½%' cash.—300 crates 2/37 pure lard Ideal at 13.95 c.i.f. Ponce, including containers.—Accepted: J. A. Mirabal, Aparicio Hnos."

The first lot of 150 crates of the lard in question was dispatched on February 4, 1928, by railroad from Kansas City, State of Kansas, where the plaintiff has its plant, to be transported to the port of New Orleans and shipped by the steamship "Isabela" sailing from that port on the 8th of the same month, but it was not shipped until the 17th of February in another steamer, named "Montoso," which arrived in this Island a few days afterward. Because of the failure to make the above shipment by steamer during the first fortnight of February, the defendants refused to accept said lot and to pay for it. The second lot was accepted and paid for by the defendants.

The issue between the parties is that, according to the appellees, the clause of the contract which provides that there should be made "2 semi-monthly shipments during February," means that the goods should have been put on board a vessel during the first fortnight in February and not on the 17th of that month; and, according to the appellant, that the term "shipment" or "to ship" means not only to send by ship but also by railroad, and as it had dispatched the goods by rail on the 4th of February, it had complied with the contract and the defendants are bound to pay the value of the lot in question.

In *McFaddin Rice Milling Co.* v. *Maldonado,* 31 P.R.R. 450, 453–454, decided by this Court on February 6, 1923, this question was considered, and the following was said:

"The terms of the contract executed on April 19, 1920, are clear and precise. It is drafted in commercial language which is always laconic, concise and to the point. The contract was made on April 19, 1920, and it expressly stipulated the time of shipment of the merchandise and the manner of transportation in the following words:

'When_____ship during April.
'How ship_____by steamship.'

"The trial judge interpreted these words to mean that 'the contract required shipment of the rice by steamship during the month of April' and that 'the contract could be performed only by placing the goods on shipboard within the time agreed upon.' The appellant alleges that the judge considered the words 'during April' in connection with the word 'steamship' instead of connecting it with the word 'when' and that thereby the meaning of the contract had been changed. It seems that the appellant interprets the contract to mean that the seller should ship the rice 'during April', meaning a shipment by railroad, and also that the rice should be transported 'by steamship' and not 'by schooner.' However, that interpretation is contrary to the literal sense of the contract and at variance with the very allegations of the complaint.

"The words 'ship during April' respond to the word 'when' to denote the date of shipment, that is, the 'time' within which the seller should ship the merchandise, and also refer to the means of transportation, for the verb 'embark' (the exact equivalent of the word used in Spanish) both etymologically and grammatically 'to put on ship-board' and even in ordinary language can not refer to transportation 'by railroad'.

" 'Embark . . . From *em* and *bark*. To put into a ship. . . . Although this verb is sometimes used to mean to put into a coach, train, etc., as in the phrase *the merchandise was embarked on the train*, such use is not permissible.' Espasa, *Enciclopedia Universal Ilustrada Europeo-Americana*, volume 19, p. 913.

" 'Embark: To put something into a vessel . . . From *em* and *bark*.' Spanish Dictionary by M. Rodríguez Navas, p. 555.

" 'Embark: To place or put something into a vessel.' Dictionary of the Spanish Language by the Spanish Academy, 1st edition, p. 383.

"Embark means: 'To embark, to ship, to put on shipboard.' New Velázquez Spanish-English Dictionary, First Print, page 216.

"It may be seen from these definitions of the word 'embark' that its use in the contract referred to denoted the means or manner of

transportation, and that the words 'by steamship' made more clear the manner or means contemplated.''

To what was said in that case we may add that in the Spanish Dictionary published by the Spanish Royal Academy in 1914, the word *"embarcar"* (to ship) is defined as follows: *"Embarcar* (from 'en' and 'barco') a. To put persons, goods, etc., into a vessel''; and the word *"embarque,''* thus: ''The action of shipping goods, provisions, etc.''

Therefore, according to the terms used in the contract between the parties, there can be no doubt that the appellant undertook to place on board the vessel the first consignment of the goods during the first fortnight of February, and that it failed to do so.

The appellant says, with reference to the decision above cited, that the statements therein which we have transcribed are *obiter dicta* and as such not binding on the lower court, because in the contract involved in that decision there was stipulated the shipment ''by steamer.'' This is not so, as the word ''steamer'' designated only the kind of vessel, and the issue in that case was, as here, whether the word *"embarque''* meant to put the goods on board a vessel or whether it also meant to put them on board a train.

The appellant contends that, as nearly all of the commerce of this Island is with the United States of America, the term *"embarque''* should receive here the same construction that is given by some of the courts in that country to the English word ''shipment.'' However, we think it more logical that, since the contract was made in this Island and in the Spanish language, the words used should be given their general and ordinary signification in Spanish.

As we see it, the terms of the contract in the present case are clear and leave no room for doubt or ambiguity as to the intention of the parties, and for this reason the literal sense of its stipulations must be followed, as provided by section 1248 of the Civil Code. Hence, it was not error for

the trial court to strike out the allegation of the original complaint and the evidence introduced at the trial which tended to show that the word *"embarque"* also means in the commercial usage of this Island, as claimed by some people, shipment from a manufacturing plant, and that the word *"embarque"* is used in the waybills issued by the railroad company operating in this Island to cover goods handed to it for their transportation.

As regards the imposition of costs on the appellant, we do not think that any error was committed, for inasmuch as the term *"embarque,"* used in the contract, has a clear meaning, has been construed by this Court prior to the commencement of this litigation, and its equivalent in English has the same meaning according to many English dictionaries, there was obstinacy on the part of the plaintiff in bringing a suit against the defendants under the circumstances.

The judgment appealed from must be affirmed.